UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL TABANGO, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | CAUSE NO: 4:25-cv-25 |
| ) | |
| BOARD OF TRUSTEES OF PURDUE ) | |
| UNIVERSITY and NEERA JAIN (in her ) | |
| individual capacity), ) | |
| ) | |
| *Defendants*. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.  Comes now the Plaintiff, Michael Tabango ("Plaintiff"), by undersigned counsel, and hereby files this lawsuit against the defendants, Board of Trustees of Purdue University ("Purdue") and Neera Jain ("Jain") (in her individual capacity), under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983 ("Equal Protection"), Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* ("Rehab Act"), Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").

## PARTIES

2.  Plaintiff is a citizen residing in the State of Indiana. During the events described herein, Purdue employed Plaintiff as a graduate research assistant in its Department of Mechanical Engineering.

3.  Purdue is an institution of higher education that operates and conducts business in the Northern District of Indiana.

4. At all relevant times, Purdue employed Neera Jain ("Jain") as an Associate Professor of Mechanical Engineering at Purdue University and she acted under color of state law. She is named in her individual capacity.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 & § 1343.

6. This Court has personal jurisdiction over Purdue on the grounds that Purdue is conducting business within the State of Indiana.

7. This Court has personal jurisdiction over Jain because the acts and omissions giving rise to Plaintiff's claims against her occurred in Indiana.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claim occurred in this judicial district.

9. Plaintiff timely exhausted his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission on July 6, 2024, and a complaint with the Department of Education Office of Civil Rights on July 1, 2024.

10. Plaintiff received a Notice of Right to Sue from the EEOC on January 16, 2025, and he has timely filed this lawsuit.

## FACTUAL ALLEGATIONS

11. Plaintiff is disabled, has a record of a disability, and/or Purdue regarded him as disabled as defined by the ADA.

12. Plaintiff is diagnosed with Autism Spectrum Disorder ("ASD"), major depressive disorder, and generalized anxiety disorder.

13. On or about June 6, 2022, Purdue employed Plaintiff as a graduate research assistant in its Department of Mechanical Engineering.

14. At all times relevant, Plaintiff met and/or exceeded Purdue's legitimate job expectations.

15. At all relevant times, Neera Jain, Associate Professor of Mechanical Engineering at Purdue, was Plaintiff's research advisor.

16. On or about July 10, 2022, Plaintiff disclosed his ASD diagnosis to several coworkers.

17. On or about August 4, 2022, two graduate research assistants who reported to Jain, Matthew Konishi and Ethan Rabb, harassed Plaintiff because of his diagnosis with ASD while at a social event outside of work.

18. Konishi and Rabb attempted to get Plaintiff intoxicated at a social event and proceeded to make fun of certain behaviorisms linked to his ASD diagnosis.

19. Rabb promised to drive Plaintiff home from the event but later refused to do so.

20. Plaintiff complained to Jain about the incident and ongoing workplace harassment, but Jain took no remedial action despite having knowledge of his ASD diagnosis.

21. Plaintiff complained about how two graduate research assistants who reported to Jain, Madeliene Yuh and Trevor Bird, indicated that Plaintiff used ASD diagnosis as an excuse for intentionally upsetting people.

22. Yuh and Bird complained that Plaintiff would purposefully sing and whistle at work to be loud and disruptive, but these actions were attributable to Plaintiff's ASD diagnosis.

23. On or about October 4, 2022, Jain inquired about Plaintiff's ADHD medication and became aware of Plaintiff's generalized anxiety disorder diagnosis.

24. In or around early November 2022, Plaintiff was hospitalized because of complications with his anxiety medication and Jain became aware of Plaintiff's major depressive disorder diagnosis during a phone conversation with him.

25. On or about December 7, 2022, a non-disabled female student supervised by Jain, Ara Bolander, made a false complaint about Plaintiff to Jain, stating she told Plaintiff several times she did not feel comfortable discussing certain topics with him and that it disrupted her work.

26. These discussions involved what conditions would trigger individuals to initiate divorce proceedings against their spouses.

27. However, Bolander actively participated in the conversations she complained about, and she later acknowledged in a conversation in Plaintiff's presence that he did not disrupt her work.

28. Plaintiff's diagnosis with ASD affects his communication style and social interactions.

29. As a result of Plaintiff's disability, he may engage in conversations that are perceived as unusual or atypical.

30. Further, Plaintiff may express himself in ways that differ from other non-disabled individuals, which can be perceived as unconventional.

31. Despite Bolander's engagement in personal and sensitive conversations in the academic environment, Jain credited her false complaint while ignoring the context of her involvement.

32. By contrast, Plaintiff was subjected to heightened scrutiny, denied support, and ultimately removed from his position.

33. Jain's disparate treatment of Plaintiff, as compared to Bolander, was motivated by discriminatory animus based on Plaintiff's known disabilities and/or sex and was not based on any legitimate academic or professional concern.

34. In or around the beginning of 2024, Plaintiff began engaging in a pattern of self-harm attributable to his anxiety and major depressive disorder diagnoses.

35. Plaintiff forcefully injured himself on numerous occasions due to experiencing confusion and distress caused by Bolander's conduct and Purdue's and Jain's unfair treatment of him.

36. On or about January 28, 2024, Jain became aware that Plaintiff had been harming himself because of the unlawful treatment he experienced because of his disabilities.

37. On or about April 4, 2024, Plaintiff informed Jain that she needed to take his keys to a gun safe pursuant to a recommendation by his therapist as part of a personal safety plan.

38. On or about April 5, 2024, Jain informed Plaintiff she was not comfortable being on the safety plan and indicated she lost his keys in her filing cabinet.

39. Plaintiff took time off work from on or about April 19, 2024 to on or about April 26, 2024 to manage symptoms associated with his disabilities.

40. On or about April 22, 2024, Plaintiff suffered a panic attack attributable to his disabilities and severely injured himself, causing himself to suffer a concussion.

41. Plaintiff sent Jain a picture of his head to communicate that he had injured himself and requested time off work as an accommodation to treat his injury.

42. Accompanied by the picture, Plaintiff indicated, "this is what the thought of returning to work did to me."

43. On or about April 29, 2024, Purdue denied Plaintiff's access to Ray W. Herrick Laboratories ("HERL"), a research facility located in its campus that he worked at allegedly because of his engagement in threatening behavior.

44. Plaintiff did not engage in any threatening behavior.

45. A non-disabled male graduate research assistant who reported to Jain, Jain Qiruan, engaged in threatening workplace conduct but he was not denied access to the laboratory.

46. By way of example and not limitation, Qiruan made threats of violence to his coworkers and would frequently put his hands around a coworker's neck and pretend to choke him.

47. On or about May 2, 2024, Ekhard Groll informed Plaintiff that Jain withdrew as Plaintiff's research advisor.

48. Due to Jain's withdrawal, Purdue informed Plaintiff that he needed to find another research advisor to continue his education and employment after the end of the summer term, which expired at the end of May 2024.

49. Plaintiff disputed his upcoming termination, and Purdue extended his employment to the end of the fall semester.

50. However, Plaintiff discovered that most faculty had already recruited students for the grants they received in the fall, preventing him from obtaining a new research advisor.

51. Plaintiff discussed a research assistant position with Professor Shirley Dyke in early August 2024.

52. Dyke confirmed she had funding for an additional student starting in the fall semester and stated Plaintiff was qualified for the position because of his publication history and his background in sensor fusion.

53. Despite the foregoing, Dyke inexplicably reversed course on August 5, 2024, after asking for additional time to make a final decision.

54. At that time, Dyke indicated that she did not believe the employment opportunity would work out.

55. Dyke made her final decision merely hours after Purdue's Office of Institutional Equity ("OIE") investigators completed their report on Plaintiff's internal complaint of disability discrimination.

56. Plaintiff also discussed a research assistant position in the summer of 2024 with Professor Yan Gu and applied on or about August 28, 2024.

57. However, Gu stated she already made offers for students that would start in the fall, and Plaintiff was denied another employment opportunity because of his disabilities.

58. Plaintiff was not able to secure another research assistant position with Purdue despite his reasonable efforts.

59. As a direct result of Jain's withdrawal and Purdue's failure to provide a new advisor, Plaintiff was unable to meet the requirements of his academic and employment program.

60. Despite his efforts, Plaintiff was denied further research assistant opportunities, effectively terminating his employment and ability to continue his graduate studies.

61. Purdue's conduct rendered Plaintiff's continued enrollment and employment impossible.

62. Purdue discriminated against Plaintiff in violation of the ADA, the Rehab Act, and Title IX.

63. Any reason(s) given by Purdue for its unlawful treatment of Plaintiff are pretextual.

## COUNT I

### AMERICANS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION

64. Plaintiff hereby incorporates paragraphs 1-63 of his Complaint.

65. Purdue terminated Plaintiff because of his disabilities in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA").

66. Other similarly-situated nondisabled employees were not terminated for engaging in the same or similar conduct as Plaintiff.

67. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

68. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT II

### AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

69. Plaintiff hereby incorporates paragraphs 1-68 of his Complaint.

70. Purdue failed to accommodate Plaintiff in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA").

71. Purdue failed to engage in an interactive process with Plaintiff to determine whether any accommodation was reasonable prior to terminating him.

72. Purdue's unlawful actions were willful, intentional, and done with reckless

disregard for Plaintiff's federally protected civil rights.

73. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT III

### AMERICANS WITH DISABILITIES ACT – DISABILITY HARASSMENT/HOSTILE WORK ENVIRONMENT

74. Plaintiff hereby incorporates paragraphs 1-73 of his Complaint.

75. Plaintiff suffered peer-to-peer disability harassment in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA").

76. The disability-based harassment Plaintiff experienced was unwelcome, severe and pervasive, and created a work environment that was intimidating, hostile, and offensive.

77. Purdue took no legitimate actions to remedy the hostile work environment, despite its knowledge of Plaintiff's complaints of harassment.

78. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

79. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT IV

### AMERICANS WITH DISABILITIES ACT – RETALIATION

80. Plaintiff hereby incorporates paragraphs 1-79 of his Complaint.

81. Purdue retaliated against Plaintiff by terminating his employment after he complained of disparate treatment and harassment, after he requested an accommodation, and after he filed a Charge of Discrimination with the EEOC and a complaint with the Department of

Education.

82.     Purdue terminated Plaintiff for having requested time off of work to manage the symptoms associated with his disabilities.

83.     Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

84.     Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT V

### REHABILITATION ACT OF 1973 – DISABILITY DISCRIMINATION

85.     Plaintiff hereby incorporates paragraphs 1-84 of his Complaint.

86.     Purdue terminated Plaintiff because of his disabilities in violation of Section 504 of the Rehab Act.

87.     Other similarly-situated nondisabled employees were not terminated for engaging in the same or similar conduct as Plaintiff.

88.     Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

89.     Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT VI

### REHABILITATION ACT OF 1973 – FAILURE TO ACCOMMODATE

90.     Plaintiff hereby incorporates paragraphs 1-89 of his Complaint.

91.     Purdue failed to accommodate Plaintiff in violation of Section 504 of the Rehab Act.

92. Purdue failed to engage in an interactive process with Plaintiff to determine whether any accommodation was reasonable prior to terminating him.

93. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

94. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT VII

### REHABILITATION ACT OF 1973 – DISABILITY HARASSMENT/HOSTILE WORK ENVIRONMENT

95. Plaintiff hereby incorporates paragraphs 1-94 of his Complaint.

96. Plaintiff suffered peer-to-peer disability harassment in violation of Section 504 of the Rehab Act.

97. The disability-based harassment Plaintiff experienced was unwelcome, severe and pervasive, created a work environment that was intimidating, hostile, and offensive.

98. Despite Plaintiff's complaints of harassment, Purdue took no legitimate actions to remedy the hostile work environment.

99. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

100. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT VIII

### REHABILITATION ACT OF 1973 – RETALIATION

101. Plaintiff hereby incorporates paragraphs 1-100 of his Complaint.

102. Purdue retaliated against Plaintiff by terminating his employment after he complained of disparate treatment and harassment, after he requested an accommodation and after he filed a Charge of Discrimination with the EEOC and a complaint with the Department of Education.

103. Purdue terminated Plaintiff for having requested time off to manage the symptoms associated with his disabilities.

104. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

105. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT IX

### TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972 – SEX DISCRIMINATION

106. Plaintiff hereby incorporates paragraphs 1-105 of his Complaint.

107. Purdue discriminated against Plaintiff based on his sex in violation of Title IX.

108. Other similarly-situated female employees were not terminated for engaging in the same or similar conduct as Plaintiff.

109. Defendant's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

110. Plaintiff has and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT X

## TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972 – RETALIATION

111. Plaintiff hereby incorporates paragraphs 1-110 of his Complaint.

112. Purdue retaliated against Plaintiff by terminating his employment after he complained of disparate treatment and harassment and after he filed a Charge of Discrimination with the EEOC and a complaint with the Department of Education.

113. Purdue's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's federally protected civil rights.

114. Plaintiff has suffered and continues to suffer harm as a result of Purdue's unlawful actions.

## COUNT XI

## 42 U.S.C. § 1983 – EQUAL PROTECTION
(Against Neera Jain in Her Individual Capacity)

115. Plaintiff hereby incorporates paragraphs 1-114 of his Complaint.

116. At all relevant times, Jain acted under color of state law in her capacity as a professor and/or agent of Purdue University.

117. Jain subjected Plaintiff to disparate treatment on the basis of his disabilities and/or sex in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

118. Jain treated Plaintiff less favorably than similarly situated female and/or nondisabled individuals.

119. Jain permitted and/or tolerated false complaints about Plaintiff, refused to address workplace harassment, withdrew from her role as Plaintiff's advisor under discriminatory

- 6 -

circumstances, and facilitated actions that led to his termination from Purdue's graduate program.

120. Jain's actions were intentional, motivated by discriminatory animus, and not justified by any important or legitimate government interest.

121. Jain acted under color of state law when she deprived Plaintiff of equal protection guaranteed by the Fourteenth Amendment.

122. Jain's conduct violated clearly established constitutional rights.

123. Jain's unlawful actions were willful, intentional, and done with reckless disregard for Plaintiff's constitutional rights.

124. Plaintiff has suffered and continues to suffer harm as a result of Jain's unlawful actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Michael Tabango respectfully requests that this Court find for him and order that:

1. Defendants pay compensatory and punitive damages to Plaintiff;

2. Defendants pay pre- and post-judgment interest to Plaintiff;

3. Defendants pays Plaintiff's attorneys' fees and costs incurred in this action; and

4. Any and all other legal and/or equitable damages that this Court determines just and proper to grant.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin

*s/ Matthew A. Smith*
Matthew A. Smith

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
Telephone: (317) 955-9500
Facsimile: (317) 955-2570
Email: jhaskin@jhaskinlaw.com
Email: msmith@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Michael Tabango, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin

*s/ Matthew A. Smith*
Matthew A. Smith

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
Telephone: (317) 955-9500
Facsimile: (317) 955-2570
Email: jhaskin@jhaskinlaw.com
Email: msmith@jhaskinlaw.com