UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

MICHAEL TABANGO,

    Plaintiff,

    v.

PURDUE UNIVERSITY, *et al*.,

    Defendants.

Case No. 4:25-CV-25-GSL-AZ

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss [DE 67] filed by Defendants, Purdue University, Christine Marcuccilli, Alysa Rollock, Gregory Shaver, Neera Sundaram, and Christina Wright, on November 24, 2025. Plaintiff, Michael Tabango, responded [DE 74] on February 2, 2026, and Defendants replied [DE 77] on February 13, 2026. Plaintiff also filed a Request for Oral Argument [DE 78] on February 26, 2026. For the reasons set forth below, Plaintiff's Request for Oral Argument [DE 78] is **DENIED** and Defendants' Motion to Dismiss [DE 67] is **GRANTED**.

## BACKGROUND[1]

### A. Factual History

Plaintiff is an adult male who has been diagnosed with Autism Spectrum Disorder ("ASD"), major depressive disorder, and generalized anxiety disorder. [DE 28 at ¶ 28]. On June 6, 2022, Plaintiff began his employment with Purdue University ("Purdue") as a graduate research assistant in Purdue's Department of Mechanical Engineering. [*Id*. at ¶ 29]. Dr. Neera Jain

---

[1] Defendants represent that they accept the non-conclusory factual allegations contained in the First Amended Complaint [DE 28] as true for purposes of the Motion to Dismiss only. *See* [DE 68 at 3].

Sundaram[2] (hereinafter referred to as "Dr. Jain") served as Plaintiff's research advisor. [*Id*. at ¶ 20]. She also supervised several other graduate students: Matthew Konishi, Ethan Rabb, Madeline Yuh, Trevor Bird, and Ara Bolander. [*Id*. at ¶ 33, 38]. Shortly after beginning his employment with Purdue, Plaintiff disclosed his ASD, depression, and anxiety disorders to Dr. Jain as well as to the other students whom she supervised, and he worked closely with. [*Id*. at ¶ 32, 37, 41].

Between approximately August 2022 and April 2024, students complained to Dr. Jain about behavior Plaintiff had engaged in while at work. *See generally* [DE 28 at ¶¶ 33-58]. During that same time period, Plaintiff complained to Dr. Jain about the other students' treatment of him. [*Id*.]. Dr. Jain established a policy where students were to discuss conflicts amongst themselves before involving her. [*Id*. at ¶75].

In August 2022, Plaintiff reported to Dr. Jain that Matthew Konishi and Ethan Rabb harassed him due to his ASD diagnosis during a social event outside of work. [DE 28 at ¶ 33]. On another occasion, Plaintiff complained to Dr. Jain that Madeline Yuh and Trevor Bird accused him of using his ASD diagnosis as an excuse for intentionally upsetting people in the workplace. [*Id*. at ¶ 38]. Specifically, Yuh and Bird complained that Plaintiff would sing and whistle loudly while working, which he attributed to his ASD diagnosis as self-soothing behaviors. [*Id*. at ¶ 39]. In December 2022, Ara Bolander, also supervised by Dr. Jain, reported that she did not feel comfortable discussing certain topics with Plaintiff. [*Id*. at ¶¶ 42-44]. As a result, Bolander and Plaintiff established a mutual signal whereby Bolander would give Plaintiff the signal and that would indicate to him that she was uncomfortable with the conversation they were engaging in. [*Id*. at ¶ 78-79]. Despite this, Bolander's discomfort with Plaintiff grew and in April 2024, she,

---

[2] Dr. Neera Jain Sundaram uses the name "Dr. Jain" in her professional capacity. [DE 28 at 5].

with the help of Dr. Jain, reported Plaintiff's behavior to Purdue's Office of Institutional Equity (OIE). [*Id*. at ¶ 83].[3]

As discussed above, Plaintiff suffers from ASD, anxiety, and depression. [DE 28 at ¶ 28]. While employed as a graduate research assistant at Purdue, Plaintiff suffered complications from his mental health conditions and was hospitalized. *See generally* [*Id*. at ¶¶ 40-41, 46-54]. In January 2024, Plaintiff began engaging in a pattern of self-harm due to his anxiety and depression. [*Id*. at ¶ 46]. On April 4, 2024, Plaintiff informed Dr. Jain that she needed to take possession of the keys to his gun safe per the recommendation of his therapist as part of a personal safety plan he had formulated. [*Id*. at ¶ 49]. Dr. Jain informed Plaintiff that she was not conformable being part of his personal safety plan. [*Id*. at ¶ 50]. A couple of weeks later, Plaintiff took time off of work to manage symptoms associated with his anxiety and depression. [*Id*. at ¶ 51]. On April 22, 2024, Plaintiff experienced a panic attack and severely injured his head. [*Id*. at ¶ 52]. Plaintiff sent a photo of his head to Dr. Jain to show her that he had injured himself along with a message stating that "this is what the thought returning to work did to me." [*Id*. at ¶¶ 53-54].

A few days later, on April 29, 2024, Plaintiff's access to a research facility located on Purdue's campus was revoked. [DE 28 at ¶ 55]. On May 2, 2024, Plaintiff was notified, through Gregory Shaver, a Director at Purdue, that Dr. Jain withdrew as his research advisor, and informed Plaintiff that he would need to find another research advisor in order to continue his education and employment beyond May 2024. [*Id*. at ¶¶59-60]. Plaintiff disputed the May 2024 deadline and Purdue extended through the end of the fall semester. [*Id*. at ¶ 61]. Plaintiff discussed research assistant positions with several Purdue professors including Professors Shirley Dyke and Yan Gu,

---

[3] Unrelated to Bolander's OIE complaint, Plaintiff filed his own complaint with OIE in May 2024. [DE 28 at ¶ 92]. It was related to harassment Plaintiff allegedly suffered by other students. [*Id*. at ¶87]. Plaintiff's OIE complaint was eventually dismissed for being time barred. [*Id*. at ¶ 92].

though he ultimately was not extended any offers. [*Id*. at ¶¶ 62-69]. As a result, Plaintiff's position as graduate research assistant at Purdue was effectively terminated. [*Id*.].

### B. Procedural History

As a result of the above-described events, Plaintiff initiated this lawsuit on April 16, 2025. [DE 1]. Plaintiff amended his complaint as a matter of course on August 27, 2025. The First Amended Complaint (hereinafter referred to as "FAC") alleges that Defendants Purdue University, Dr. Neera Jain Sundaram, Gregory Shaver, Alysa Rollock, Christine Marcuccilli, and Christina Wright discriminated against him based on his disability and gender, and in doing so violated Sections 503 and 504 of the Rehabilitation Act, Title IX, and 28 U.S.C. § 1983. *See generally* [DE 28]. More specifically, within the 27 counts alleged in the FAC, Plaintiff claims that the Defendants failed to accommodate him, discriminated against him, harassed and retaliated against him, and subjected him to disparate treatment based on his disability. [*Id*.] He also claims that Defendants discriminated against him based on his sex. [*Id*.]. Finally, he alleges that he was denied his equal protection, due process, and free speech rights as a result of Defendants' conduct. [*Id*.]. Defendants have now moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### LEGAL STANDARD

A plaintiff survives a Rule 12(b)(6) motion to dismiss when "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor

of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

**DISCUSSION**

Addressing Plaintiff's Request for Oral Argument [DE 78] first: Plaintiff appears to be requesting that the Court hold a hearing on the instant Motion to Dismiss so that he can provide the Court with further argument on what he alleges to be "inconsistencies" in Defendants arguments as well as how his claims could be realleged if the Court finds they should be dismissed as currently pled. *See* [DE 78].  Defendants have not responded to Plaintiff's request.

First, it is entirely in the Court's discretion as to whether an oral argument should be held on a motion filed before it. Additionally, the purpose of an oral argument is to clarify and isolate the issues ripe for decision. There is no confusion as to the issues presently before the Court. Therefore, an argument would be futile, and Plaintiff's request [DE 78] is **DENIED**.

A. *Section 503 of the Rehabilitation Act (Counts I – VI)*

Plaintiff has withdrawn his claims against Defendants pursuant to Section 503 of the Rehabilitation Act for discrimination (Count I), failure to accommodate (Count II), harassment (Count III), retaliation (Counts IV & V), and disparate treatment (Count VI) and asks that the Court instead "construe[] [them] as counts under Section 504, but with regard to employment discrimination, while his originally named Section 504 counts [(Counts VII – XII)] be construed as education discrimination." [DE 74 at 4-5].

Plaintiff's reason for withdrawing the Section 503 claims is correctly based on the well-established Seventh Circuit precedent that there is no private right of action under that section of

the Rehabilitation Act. [*Id.* at 4]; *see also Ernst v. Indiana Bell Tel. Co.*, 717 F.2d 1036 (7th Cir. 1983); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1478 (7th Cir. 1985); *Young v. Martin Enters., Inc.*, 2008 WL 5384685, at *4 (N.D. Ind. Dec. 22, 2008) (explaining that "any claim asserted by [a plaintiff] under Section 503 is doomed as a matter of law because in the Seventh Circuit, Section 503 does not create a private right of action"). However, Plaintiff's request that the Court instead construe these counts as claims under Section 504 of the Rehabilitation Act is improper. "[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012); *Batistatos v. Lake Cnty. Convention & Visitors Bureau d/b/a/ S. Shore Convention & Visitors Auth.*, 2026 WL 472053, at *8 (N.D. Ind. Feb. 19, 2026).  Accordingly, Counts I – VI of the Amended Complaint are dismissed.

   B.  *Section 504 of the Rehabilitation Act (Counts VII – XII)*

Counts VII – XII of the Amended Complaint are brought against Defendant Purdue only for violations of Section 504 of the Rehabilitation Act. [DE 28 at ¶ 143 – 156]. More specifically, Plaintiff alleges that Purdue violated Section 504 of the Rehabilitation Act by failing to accommodate him (Count VII), subjecting him to a hostile work environment (Count VIII), discriminating against him (Count IX), retaliating against him (Counts X & XI), and by maintaining practices and policies that have disparate impacts (Count XII).

   Claims under Title II of the ADA and Section 504 of Rehabilitation Act are "treated as functionally identical[.]" *Culp v. Caudill*, 140 F.4th 938, 942 (7th Cir. 2025); *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024) ("[C]ourts construe and apply [the statutes] in a consistent manner,' and our evaluation of [a plaintiff's] claims under both [requires] the same analysis"). Therefore, in order to state a claim under Section 504 of the Rehabilitation Act for disability

discrimination (Count IX), Plaintiff must plead facts that plausibly suggest that (1) he is a qualified individual with a disability; (2) Purdue denied him the benefits of its services, programs, or activities or otherwise subjected to discrimination; and (3) the denial or discrimination was because he was disabled. *See Brown v. Meisner*, 81 F.4th 706, 708–09 (7th Cir. 2023); *Mapes v. Carroll Cnty. Superior Ct.,* 2025 WL 3012755, at *6 (N.D. Ind. Oct. 27, 2025). However, the Seventh Circuit has "consistently concluded that the Rehabilitation Act's sole-causation standard is more stringent than the ADA's 'but for' inquiry." *Lewis v. Indiana Dep't of Transportation*, 2026 WL 1090714, at *3 (7th Cir. 2026). That means that "a plaintiff bringing a claim under the Rehabilitation Act must show *sole causation*, rather than but-for causation." *Id*. (emphasis added).

Plaintiff's claims brought pursuant to Section 504 simply restate the allegations under Counts I through VI which support the now withdrawn Section 503 claims against Purdue and Dr. Jain. Looking first at Count IX titled "Section 504 of Rehab Act of 1973 – Disability Discrimination … (Against Purdue)", alleges only that:

> 149. Plaintiff hereby incorporates paragraphs 1-136 of his Complaint
>
> 150. Plaintiff experienced disparate treatment as detailed in Count I.
>
> 151. Count I outlines facts to establish deliberate indifference as Neera Jain, Matthew Wade, acting as Purdue's agents knew or should have known their conduct was discriminatory.

[DE 28 at ¶¶ 149-151].  While it is common practice to incorporate previous paragraphs in the foregoing counts of a complaint, Defendants correctly point out that paragraphs 1-136 of the Amended Complaint fail to plausibly allege any facts that *Purdue* denied Plaintiff the benefits of its services, programs, or activities or otherwise subjected him to discrimination.  Rather, the allegations contemplate conduct by Dr. Jain, and other students who are not named defendants in this case. *See generally* [*Id*. at ¶¶ 1-136].  And further, the allegations are not all based on

discrimination due to Plaintiff's disability, there are also allegations of discrimination based on his sex, which is wholly irrelevant to any claims brought pursuant to the Rehabilitation Act. Plaintiff's response brief does not address Purdue's argument that he fails to allege that *Purdue* denied him the benefits of its services, programs, or activities or that *Purdue* otherwise subjected to discrimination. Accordingly Count IX fails to state a claim.

Count VII of the Amended Complaint is a failure to accommodate claim under Section 504 of the Rehabilitation Act against Purdue. To succeed on this claim, Plaintiff must prove that (1) he was a qualified individual with a disability, (2) Purdue was aware of his disability, and (3) Purdue failed to reasonably accommodate his disability. *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019) "Relevant to—and sometimes determinative of—the third element is the employer and employee's respective cooperation "in an interactive process to determine a reasonable accommodation." *Id*.

Plaintiff alleges that he "was dismissed from the mechanical engineering program" and therefore "denied services and benefits given to graduate students … **solely** because Purdue failed to accommodate [him] as detailed in [C]ount II." [DE 28 at ¶¶ 143-145] (emphasis in original). Despite the fact that the Court has already held that Count II fails to state a claim, looking at the factual allegations therein, Plaintiff claims that because Dr. Jain removed herself as his advisor, "reassignment was an accommodation forced on him" by Purdue. [*Id*. at ¶ 103-104]. Specifically, Purdue gave Plaintiff a month deadline, which was later extended, to find another advisor in order to maintain his position as a graduate research assistant. Plaintiff alleges that "directing a qualified employee to compete with others for vacant positions is not an accommodation since anyone can apply for vacant positions." [*Id*. at ¶ 106]. But in his Response Brief, Plaintiff states that "he accepted the offered accommodation" and cites to paragraphs 103-108 of the FAC. [DE 74 at 10].

The allegations in the FAC and Plaintiff's Response brief contradict each other. On the one hand, Plaintiff alleges that he was given an accommodation as he asserts that he "accepted" it, but then he alleges that by Purdue directing him to compete with others for a vacant position, it failed to provide him with an accommodation. *See* [DE 28 at ¶ 106]; [DE 74 at 10]. Regardless, Plaintiff fails to allege any facts identifying what the required accommodation would have been, that he even requested an accommodation from Purdue, or that Purdue denied him of it. *See A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 2011 WL 4005987, at *7 (N.D. Ind. Sept. 8, 2011) (dismissing a failure to accommodate claim where the "the Complaint allege[d] no facts that plausibly suggest[ed] that [the plaintiff] requested an accommodation from [her employer] for her disability, it fail[ed] to identify an accommodation that [the plaintiff] needed, [n]or provide[d] any factual context supporting a failure to accommodate claim"); *see also E.E. O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803–04 (7th Cir.2005) (holding that to succeed on a failure to accommodate claim, a plaintiff must request an accommodation). Therefore, Count VII fails to state a claim.

Count VIII alleges a hostile work environment under Section 504 of the Rehabilitation Act against Purdue. Again, Plaintiff pleads no specific facts under this Count, but rather points back to Count III, his withdrawn hostile work environment claim under Section 503 of the Rehabilitation Act. The allegations under Count III contemplate "peer-to-peer disability harassment" consisting of Plaintiff's peers making false statements about his professional standing which resulted in the worsening of his mental health and that Purdue took no legitimate actions to remedy the hostile work environment. [DE 28 at ¶¶ 111-115]. There are other facts alleged in the FAC that describe interactions Plaintiff had with other students that involved name-calling and sexually explicit jokes. *See generally* [*Id*. at ¶¶ 1-136].

"A hostile work environment exists where an employee experiences harassment that is so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (holding that "[a]lthough we have not yet decided whether a claim for hostile work environment is cognizable under the … Rehabilitation Act, we have assumed the existence of such claims where resolution of the issue has not been necessary[,] … [and] [w]e have further assumed that the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII"). "A plaintiff establishes an alteration in the terms and conditions of employment by demonstrating either a tangible employment action, such as discharge or demotion, or a non-tangible action, such as discriminatory conduct that is so severe or pervasive as to create an "abusive" working environment." *Id*.

The Seventh Circuit has recognized factors such as "the frequency, severity, and threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interferes with [the employee's] work performance" in determining whether the alleged harassment is pervasive or severe enough to establish a hostile work environment for purposes of the Rehabilitation Act. *Mannie,* 394 F.3d at 983. Also, the alleged harassment "must be related to" the plaintiff's disability. *Id*. Finally, it is worth noting that the Seventh Circuit has consistently held that incidents of "personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022); *see also Lin v. Drummond*, 2024 WL 5348576, at \*2 (7th Cir. 2024) (*finding* "hateful looks, sneers, sideways glances, and other encounters" insufficient to constitute a hostile work environment); *Hambrick v.*

*Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) (holding that "personality issues with coworkers and supervisors … does not amount to "objectively offensive, severe, or pervasive" conduct").

As an initial note, many of Plaintiff's allegations relating to his claim for hostile work environment are conclusory. *See* [DE 28 at ¶ 11] ("Plaintiff suffered peer-to-peer disability harassment"); [*Id*. at ¶ 113] ("The conduct was pervasive because it was patterned over a long period of time"). Plaintiff alleges that students "ma[de] sexually explicit remarks and engag[ed] in discussions alleged to be harassing in nature." [*Id*. at ¶ 95]. He also claims that another student's "conduct was objectively offensive" because she allegedly did not fulfil a promise to him that she would give certain signals when his behavior was making her uncomfortable. [*Id*. at ¶ 114]. These allegations regarding Plaintiff's peer's "harassment" of him are precisely what the Seventh Circuit has refused to recognize as establishing a hostile work environment, nor do the instances of misconduct appear to be motivated by his disability. *Brooks,* 39 F.4th at 441.  Accordingly, Count VIII fails to state a claim.

Counts X and XI of the FAC allege retaliation under Section 504 of the Rehabilitation Act against Purdue. *See* [DE 28 at ¶¶ 152-153].  These counts contain no factual allegations in support and refer back to Counts IV and V which are claims for retaliation under Section 503 of the Rehabilitation Act. *See* [*Id*. at ¶¶ 118-136].  The facts described therein consist of Plaintiff asking Dr. Jain for time off because he could not keep himself safe otherwise, and sent pictures of his bloody head "to demonstrate the critical nature of th[e] request" which he considers to be "making an accommodation request and thus engaging in protected activity." [*Id*. at ¶ 121]. He goes on to allege that at some point thereafter, Dr. Jain submitted a complaint to Purdue's OIE based on the images sent to her by Plaintiff and then "withdrew as [his] research advisor which resulted in [Plaintiff] being dismissed from the PhD program and losing his employment with Purdue[.]" [*Id*.

at ¶¶ 122-123]. Plaintiff appears to be asserting that Dr. Jain's retaliation was withdrawing from her role as his supervisor due to the photos he sent to her: "[Dr.] Jain clearly identified … that the pictures [] [P]laintiff sent her were a critical turning point where she stopped viewing 'a way forward' advising him leading to her decision to remove herself as his research advisor thus establishing a but-for causal relationship between the protected activity and the adverse action." [*Id*. at ¶ 123]. Plaintiff attributed this incident to also being the reason why he could not obtain a new faculty advisor because he assumed prospective faculty advisors had access to Dr. Jain's OIE complaint. *See generally* [*Id*. at ¶¶124-136]. His support for this assumption is based on the fact that a prospective faculty member emailing him outside of normal business hours when she "had only responded to emails during regular business hours" in the past. [*Id*. at ¶¶ 131-134].

To prove retaliation under the Rehabilitation Act, "an employee must show: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action by her employer; and (3) there is a causal link between the two. *Lewis v. Indiana Dep't of Transportation*, 2026 WL 1090714, at *5 (7th Cir. 2026). Plaintiff's allegations, as discussed above, fail to satisfy any of the elements for plausibly alleging a claim for retaliation under the Rehabilitation Act. Accordingly, Counts X and XI fail.

The final claim, Count XII, under Section 504 of the Rehabilitation Act against Purdue is for Disparate Treatment. *See* [DE 28 at ¶¶ 154-156]. As with all of the other claims under Section 504 of the Rehabilitation Act, Plaintiff references only the allegations giving rise to his similar claim under Section 503 of the Rehabilitation Act. He claims that Purdue's "lack of centralized job board ha[d] a disparate impact on disabled individuals as it tents to screen out those who experience difficulties securing jobs due to communication and social deficits …" [*Id*. at ¶ 140]. He claims

that he was "adversely affected" by this practice as he "has always struggled with job interviews and finding work." [*Id*. at¶ 141].

To state a disparate impact claim, a complaint must identify a policy or practice that has a disparate impact on the disabled *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, 2012 WL 1877740, at *6 (N.D. Ind. May 18, 2012), *aff'd sub nom. A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend, Indiana*, 498 F. App'x 620 (7th Cir. 2012).  Importantly, "[i]ntent to discriminate is an essential element of a disparate treatment claims under the FHA, ADA, and Rehabilitation Act." *Id*.  The practice or policy alleged here is Purdue's lack of centralized job board. First, the FAC includes no tangible factual allegations of Purdue's intent to discriminate by not having a centralized job board. Second, the alleged lack of a centralized job board and Plaintiff's self-reported difficulties with interviewing and securing jobs is far too attenuated to state a claim for disparate impact. Count XII fails to state a claim.

*C.  Title IX (Count XIII)*

Count XIII of the Amended Complaint alleges a Title IX claim for sex discrimination against Purdue.  The Seventh Circuit instructs, that the appropriate inquiry in evaluating Title IX claims at the pleadings stage is whether "the alleged facts, if true, raise a plausible inference that the university discriminated against [the plaintiff] 'on the basis of sex[.]" *Doe v. Purdue*, 928 F.3d 652, 667–68 (7th Cir. 2019); *see also* 20 U.S.C. § 1681(a) (providing that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance").

The allegations giving rise to Plaintiff's Title IX claim include that: when conflicts arose between he and female students, Dr. Jain "adopted the female students position …", that Dr. Jain

did "not enforce[] the lab rule with regard to addressing interpersonal issues before involving [her] against any female student … [but] ha[d] … against [] [P]laintiff", and that "Dr. Jain … rel[ied] on infantilizing stereotypes that women must always be believed." [DE 28 at ¶¶ 160-165]. These allegations do not raise any plausible inference that *Purdue* discriminated against Plaintiff because he is a male. Count XIII fails.[4]

### D.  42 U.S.C. § 1983 Claims (Counts XIV – XXVII)

Plaintiff filed various claims pursuant to 42 U.S.C. § 1983 against the individual Defendants[5] – Dr. Jain, Shaver, Rollock, and Wright.  As to Dr. Jain, Plaintiff alleges that she, in her individual capacity only, violated his equal protection, due process, and free speech rights. *See* [DE 28 at ¶¶ 166-190].  Plaintiff alleges that Defendant Shaver, in his individual and official capacities, violated Plaintiff's rights to academic freedom and bear arms and violated his equal protection and due process rights. *See* [*Id*. at ¶¶ 191-220]. Finally, Plaintiff claims that Defendants Rollock and Wright, in both their individual and official capacities, violated his due process and equal protection rights. [*Id*. at ¶¶ 233-244].

42 U.S.C. § 1983 "imposes liability on any person who, acting under color of state law, violates the Constitution or federal law. *Orr v. Shicker*, 147 F.4th 734, 739 (7th Cir. 2025). "To prevail on a § 1983 claim, a plaintiff must show that the defendant deprived h[im] of a federal constitutional right and that the defendant acted under color of state law." *Sizyuk v. Purdue Univ.*, No. 4:20-CV-75-TLS, 2024 WL 68282, at *2 (N.D. Ind. Jan. 5, 2024). A plaintiff can sue state officials in either

---

[4] Under Count I, Plaintiff's claim for disability discrimination pursuant to Section 503 of the Rehabilitation Act, he alleges, albeit not very clearly, that he endured sex discrimination because Dr. Jain "endorsed Bolander's allegations" to OIE when Dr. Jain had not done so on his behalf. [DE 28 at ¶¶83-89].  If Plaintiff is attempting to use these factual allegations to state a claim for Title IX sex discrimination, it would also fail because these allegations do not raise a plausible inference that *Purdue* discriminated against him on the basis of his sex. *Doe v. Purdue*, 928 F.3d at 667–68.

[5] Plaintiff has withdrawn his § 1983 claims against Defendant Marcuccilli. *See* [DE 74 at 18]. Accordingly, Counts XXI, XXII, and XXIII are dismissed.

their individual or official capacities. *Orr,* 147 F.4th at 739. In an official-capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity." *Id.* By contrast, "an individual capacity suit focuses on the constitutional torts of an individual official." *Id.*

Officials sued in their official capacity may be entitled to qualified immunity making them immune "from suit for damages under § 1983 when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (citations omitted). Qualified immunity turns on two inquiries: (1) "whether the facts, taken in the light most favorable to the party asserting the injury[,] show that the offic[al]'s conduct violated a constitutional right[,]" and (2) "whether the right at issue was 'clearly established' at the time of the office[al]'s alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants Shaver, Marcuccilli, Rollock, and Wright argue that the claims asserted against them in their *official* capacity must be dismissed because they are entitled to qualified immunity. Plaintiff fails to directly address Defendants' qualified immunity argument. The allegations in the FAC relevant to the § 1983 claims against to Defendants Shaver, Rollock, and Wright are as follows: Defendant Shaver revoked Plaintiff's card access to his workspace on Purdue's campus out of concern that Plaintiff may engage in violence against Bolander, and by not giving Plaintiff an opportunity to challenge this decision, his due process rights were violated. *See generally* [DE 28 at ¶¶ 194-220]. Defendant Rollock allegedly violated Plaintiff's equal protection and due process rights by denying his OIE appeal without providing any explanation. [*Id.* at ¶¶ 233-237]. Finally, Defendant Wright, "the final decision maker for the initial dismissal of some of Plaintiff's

OIE claims[,]" violated his equal protection and due process rights when she effectuated Purdue policies that "did not provide an appeal process for preliminary dismissals …" [*Id*. at ¶¶ 238-243]. And this "lack of an appeals process demonstrate[d] a deliberate indifference to the fallibility of the decision makers that review formal complaints for preliminary establishment of … violation[s] of Purdue [p]olicies." [*Id*.].

As stated above, Plaintiff does not directly address Defendants' argument regarding qualified immunity. Nonetheless, the above-described facts do not plausibly allege that these Defendants violated a clearly established constitutional or statutory right of Plaintiff's. Defendants maintain, and the Court agrees, Plaintiff "does not cite any constitutional or statutory law that grants him the right to i) maintain access to a building when a student reported him for volatile behavior, ii) have his appeal granted, or iii) have unsubstantiated claims proceed to investigation." [DE 68 at 17]. Accordingly, Defendants Shaver, Rollock, and Wright are entitled to qualified immunity for the § 1983 claims brought against them, in their *official* capacities.

Finally, as mentioned above, Plaintiff has brought § 1983 claims against Dr. Jain, Shaver, Marcuccilli[6], Rollock, and Wright in their *individual* capacities as well. The facts giving rise to these claims are the same as those giving rise to the claims filed against them in their official capacities. Counts XV, XX, XXV, and XXVI of the Amended Complaint allege that Dr. Jain, Shaver, Rollock and Wright, in their individual capacities, violated his due process rights. Defendants argue that Plaintiff has included no factual allegations regarding the Defendants' conduct that violated his constitutional rights. Rather, they claim that his due process theories "hinge on alleged deprivations associated with [Dr. Jain's] withdrawal [as Plaintiff's research advisor], decisions to suspend his access to [a building on Purdue's campus], and the termination

---

[6] *See supra* note 5.

16

of [his] research assistantship and student status." [DE 68 at 18].  Importantly, they claim that his "pleading does not allege a valid property interest in a continued advisor relationship, lab access, or at-will research assistant funding[.]" [*Id*.]

As stated above, individuals can sue state actors in both their official and individual capacities under § 1983. Unlike official capacity § 1983 claims, "the Eleventh Amendment typically does not bar suits brought against state officials in their individual capacities because the plaintiff is seeking damages from individuals rather than from the state treasury." *Upchurch v. Indiana*, 2025 WL 2336851, at *5 (S.D. Ind. Aug. 12, 2025) However, the Seventh Circuit has explained that a plaintiff cannot "seek monetary relief from state employees in their *individual* capacities *if* the suit demonstrably has the identical effect as a suit against the state. That is to say, sovereign immunity bars individual-capacity claims for damages whenever "[t]he money will flow from the state treasury to the plaintiff[ ]." *Haynes v. Indiana Univ.*, 902 F.3d 724, 732 (7th Cir. 2018); *see also Upchurch v. Indiana*, 2025 WL 2336851, at *5 (S.D. Ind. Aug. 12, 2025) (explaining that "courts in [the Seventh] [C]ircuit have found … [w]hen the plaintiff seeks damages against individual defendants arising from an employment relationship, Eleventh Amendment immunity applies because any damages would be paid by the state employer"). In other words, if the state, rather than the state employees, is likely to "foot the bill for a resulting judgment[,] sovereign immunity is available, if applicable, regardless of whether the state officials are being sued in their official or individual capacities. *See Id*. (holding "We have no reason to believe that [the individual defendants], rather than the University, would foot the bill for a resulting judgment. Sovereign immunity therefore defeats [the plaintiff's] damages action against the University administrators, both in their individual and official capacities").

To illustrate this, in *Caselle v. Board of Trustees of the University of Illinois*, 2026 WL 788678, at  4-5 (N.D. Ill. March 19, 2026), a former employee sued the University as well as some of its employees, in both their official and individual capacities, for, *inter alia*, discrimination, harassment, and retaliation in violation of § 1983.  The court held that because the former employee's claims "all arise from his contention that [the individual defendants] denied him opportunities that he would have received from the System absent racial discrimination, harassment, and retaliation, his individual capacity claims arise from his employment relationship[,] … and therefore "sovereign immunity bars [the] claims against [the employees] in their individual capacities." *Id.; see also Upchurch*, 2025 WL 2336851, at *5 (dismissing a plaintiff's claims against individual state employees based on the denial of employment opportunities he would have received from the state if not for the alleged discrimination).

Here, Defendants do not specifically raise the issue of sovereign immunity as it relates to the individual capacity claims.  However, as pled, Plaintiff's claims against Jain, Shaver, Rollock, and Wright all revolve around Plaintiff's employment with Purdue and rights he was allegedly denied by Jain, Shaver, Rollock, and Wright while they were acting on behalf of Purdue, suggesting that, if these individuals were to be found liable, Purdue may in fact "foot the bill."  Regardless, the Court need not make such a determination at this juncture, because, as discussed above, the FAC contains only conclusory allegations, that the individual Defendants discriminated against Plaintiff based on protected characteristics, and the claims fail for that reason. *See generally* [DE 28 at ¶¶ 167-242].  Therefore, Plaintiff's § 1983 claims against Dr. Jain, Shaver, Rollock, and Wright, in their individual capacities, are dismissed.

**CONCLUSION**

For the foregoing reasons, the Court Plaintiff's Request for Oral Argument [DE 78] is **DENIED** and Defendants' Motion to Dismiss [DE 67] is **GRANTED.** The First Amended Complaint [DE 28] is **DISMISSED without prejudice.**  This case is now closed.

SO ORDERED.

ENTERED: May 26, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court